WOODHULL (DUTCHER v.). See Case No. 4,204.

## Case No. 17,975.

WOODHULL et al. v. WAGNER.

[Baldw. 296.] [1]

Circuit Court, D. Pennsylvania. April Term, 1831.

STATE INSOLVENT LAW—EXTRATERRITORIAL EFFECT —CONTRACT TO PAY MONEY—PLACE OF PAYMENT.

1. A discharge of a debtor under the insolvent law of Pennsylvania, does not protect him from arrest by a citizen of New York, for a debt payable in New York, or to a citizen of that state.

[Cited in dissenting opinion in Beers v. Haughton, 9 Pet. (34 U. S.) 373.]

2. Insolvent laws of a state have no effect beyond the limits thereof.

[Cited in Babcock v. Weston, Case No. 703; Towne v. Smith, Id. 14,115; Myratt v. Green Bay, Id. 9,998; Baldwin v. Hale, 1 Wall. (68 U. S.) 234; Von Glahn v. Varrenne, Case No. 16,994; Pritchard v. Norton, 106 U. S. 141, 1 Sup. Ct. 116.]

[Cited in Brigham v. Henderson, 1 Cush. 432; Savoy v. Marsh, 10 Metc. (Mass.) 595, 596; Deering v. Boyle, 8 Kan. 535; Hawley v. Hunt, 27 Iowa, 308; Felch v. Bugbee, 48 Me. 14; Scribner v. Fisher, 2 Gray, 47.]

3. A residing in Philadelphia, consigned goods to B residing in New York, and drew his bill on B, promising to pay the balance which might be due after the sale of the goods, if the proceeds did not reimburse B the amount of the bill. B accepted and paid the bill which exceeded the amount of sales: *Held*. that A was bound to reimburse B at New York.

[Cited in Grant v. Healey, Case No. 5,696.]

4. The decisions of the supreme court on state insolvent laws collected and classed.

This was an application to discharge the defendant from custody under a capias ad satisfaciendum, and was submitted to the court upon a statement of the facts, as follows: William Wagner, residing in Philadelphia, drew a bill upon Woodhull & Davis,

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

residing in New York. It was accepted and paid at maturity by the acceptors. The late firm of Snowden & Wagner had consigned to Woodhull & Davis a cargo of turpentine, which was not disposed of at the time of accepting the bill, at which time the firm was dissolved, and the defendant was carrying on business alone. After winding up the sales and crediting the net proceeds, a balance remained due on Wagner's bill, upon the New York house. Suit was brought against William Wagner for not indemnifying Woodhull & Davis for their acceptance on his account. The defendant being in custody on a ca. ad sa., applied for his release, on the ground of his discharge by the insolvent laws of Pennsylvania. This was opposed on the allegation, that the debt was contracted in New York, and therefore not affected by this discharge here.

BALDWIN, Circuit Justice. The statement of the case agreed on by the parties, presents only one question for the consideration of the court, which is, whether the defendant's discharge under the insolvent laws of Pennsylvania, entitles him to be discharged from the arrest made under a capias ad satisfaciendum, issued from this court in execution of a judgment obtained against him eleven months before his discharge. The power of the states of this union to pass bankrupt or insolvent laws, and the effect of the exemption of the person of the debtor, or property acquired after the discharge, have been the subject of much discussion and difference of opinion. In the supreme court, they have been so fully examined by counsel and the judges, as to make it necessary only to state the result of such cases as bear upon the present application.

In Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122, 91, it was decided: 1st. That a state had a right to pass a bankrupt law, provided there was no act of congress in force establishing a uniform system of bankruptcy, conflicting with such state law; and provided it did not impair the obligation of a contract, within the tenth section of the first article of the constitution; 2d. That such state law, liberating the person of the debtor, and discharging him from liability on contracts made previously to the law, was unconstitutional and void, so far as it discharged the contract, or attempted to do so; but, 3d. That it was valid so far as it discharged the person of the debtor from confinement, as imprisonment was merely a remedy to enforce the obligation of the contract, but no part of the contract itself, a release from it did not impair the obligation. [Sturges v. Crowninshield] Id. 200, 201. Though the court, in the latter part of their opinion (Id. 207), confine it to the second point, yet the first and third having been considered, and their judgment exercised on them, it has always been understood (and so we feel it our duty to view it), that the

law is settled on these points, according to the reasoning of the court, if not their direct decision. The same principle on the third point was affirmed in Mason v. Haile, 12 Wheat. [25 U. S.] 370, which was decided independently of any considerations arising from the locality of the contract or the parties. In that case the court declared, that a state law abolishing imprisonment for debt, would be valid as a measure regulated by the state legislature, acting on the remedy, and that in part only, and repeat the doctrine asserted in Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 378.

In M'Millan v. M'Neill, Id. 209, the court are said to have declared that the circumstance of the state law, under which the debt was attempted to be discharged, having been passed before the debt was contracted, made no difference in the application of the principle; and in Farmers' Bank v. Smith, 6 Wheat. [19 U. S.] 131, they decided that the fact of both parties being citizens of Pennsylvania when the contract was made, made no difference between that and former cases.

From the opinion of all the judges in Ogden v. Saunders, 12 Wheat. [25 U. S.] 213, 333, it seems that the point decided in M'Millan v. M'Neill [supra] was not correctly stated in the report, and that it was not intended to settle the question of the effect of the law upon contracts made subsequent to its passage. The question remained open till the case of Saunders v. Ogden, in which four of the judges gave their opinions that the contract could be discharged by a state law passed before the contract was made; putting the case on the distinction between bankrupt or insolvent laws which were retrospective, and those which were prospective in their operation. But these opinions led to no final judgment on this point, which in strictness may therefore be considered as not having been adjudicated, though it was the deliberate opinion of a majority of the court; but this point does not arise here, and it is therefore not necessary to the decision of this motion to notice it further. Another point of more immediate application arose in that case. The suit was brought on a bill drawn by Jordon in Kentucky, on Ogden, a citizen of New York, resident there, and accepted by him in favour of Saunders, a citizen of Kentucky. One of the judges who composed the majority on the first question, being of opinion that a discharge under the law of New York, was void as to a citizen of Kentucky, four judges concurred in giving judgment for the plaintiff, on the ground of the invalidity of the law. [Mason v. Haile] 12 Wheat. [25 U. S.] 369. Judge Johnson was the only judge who gave an opinion on the second point, the three who concurred with him on the first dissented on this, the three who dissented on the first assented to the judgment which was entered for the defendant in error, but without assigning any reasons beyond those given in

their dissenting opinion on the first question. If the case of Ogden v. Saunders had turned upon the mere point of citizenship of the plaintiff, it would be difficult to say what was the direct judgment of the court. Three judges thought the law of New York was valid, having been passed before the debt was contracted, and that it operated on the case, the contract having been made and to be executed there. Three gave no opinion on the locality; it was not necessary to do so, as they thought the plaintiff entitled to judgment on the first point. Thus considered, this case, standing by itself, directly adjudicates no definite question involved in the one now under hearing, as we are not informed whether the three judges who concurred with Judge Johnson in rendering judgment against the party claiming under the law, did it for the reasons assigned by them in their dissenting opinion on the first point, or those assigned by him on the second. No question arises here as to the right of the plaintiff to all remedies against the defendant's property. The law under which he has been discharged is not unconstitutional, as it attempts to discharge only the person. The only doubts are: (1) as to the effect of a discharge on a debt contracted in New York; (2) with a citizen of that state; (3) on process issued from this court. All the judges, in Ogden v. Saunders, stated that the point decided in M'Millan v. M'Neill was, that a discharge of the defendant under a law of Louisiana, could not discharge or operate on a contract made and to be executed in South Carolina, where both parties then resided. Thus affirming individually, if not in their collective judgment, the principle then settled. In several cases preceding that of M'Millan v. M'Neill, as well as in that, the supreme court have declared that the discharge by the bankrupt laws of a foreign country was no bar to an action brought on a contract made in this. [Barr v. Gratz] 4 Wheat. [17 U. S.] 213; [M'Ilvaine v. Coxe] 2 Cranch [6 U. S.] 298, 302; Robertson's Adm'rs v. Bank of Georgetown, January term, 1831 [unreported]; [Ogden v. Saunders] 12 Wheat. [25 U. S.] 358 et seq.

In Buckner v. Findley, 2 Pet. [27 U. S.] 586, the court declared that "for all national purposes embraced by the federal constitution, the states and the citizens thereof are all united under the same sovereign authority, and governed by the same laws. In all other respects the states are necessarily foreign to and independent of each other; their constitution and forms of government being, although republican, altogether different, as are their laws and institutions." Id. 590. This principle appears to be directly applicable to the laws of the states, discharging the persons and future acquisitions of debtors. Such laws are wholly unconnected with the federal relations of the states to the general government, where they do not impair the obligation of contracts. Discharges under

them are, in other states, to be considered as made under foreign laws, within the uniform decision of the supreme court, having no extra-territorial effect on contracts made beyond their jurisdiction; or with persons not subject to their laws at the time when it was to be carried into effect. In this light, and taken in connexion with these cases, the case of Ogden v. Saunders is important, as showing the concurrence of all the judges in the general principle as to the effect of discharges under foreign bankrupt laws. It is also important as connected with the case of Shaw v. Robbins, in a note to [Ogden v. Saunders] 12 Wheat. [25 U. S.] 369, in which the court decided, that a bill of exchange, drawn by a citizen of Massachusetts on a citizen of New York, and accepted by him, being a resident there, could be recovered in a state court, though the defendant had been discharged under the insolvent laws of New York. The facts of the case were those of Ogden v. Saunders, the decision in which was held applicable, and governed the one before them. Thus connected with the preceding case of M'Millan v. M'Neill, and the subsequent one of Shaw v. Robbins, the case of Ogden v. Saunders must be considered, at least in the circuit court, as settling both principles; that a discharge by the law of a state operates only on contracts made between its own citizens, and to be executed within the state. The opinion of Judge Johnson may then be taken by us as that of a majority of the court on the effect of their decision of that case in pages 368, 369. He declares it to be an adjudication in that case, "that as between citizens of the same state, a discharge of a bankrupt by the laws of that state is valid as it affects posterior contracts; that as against creditors, citizens of other states, it is invalid as to all contracts." The learned judge maintains these propositions: (1) "That the power given to the United States to pass insolvent laws is not exclusive." (2) "That the fair and ordinary exercise of that power by the states, does not necessarily involve a violation of the obligation of contracts, a multo fortiori, of posterior contracts." (3) But when states pass beyond their own limits, and the rights of their own citizens, and act on the rights of citizens of other states, the exercise of such a power is incompatible with the rights of other states, and the constitution of the United States. In [Boyle v. Zacharie] 6 Pet. [31 U. S.] 643, this point was declared to be finally and conclusively settled.

In the next case which came before the supreme court on the effect of discharges by state bankrupt laws (Clay v. Smith, 3 Pet. [28 U. S.] 411), the plaintiff was a citizen of Kentucky, the defendant of Louisiana, who was discharged, "as well his person as his future effects, from all claims of his creditors," by a law of that state passed in 1811. The debt sued for was incurred in 1808. The plaintiff made himself a party to the

proceedings under the law, and was thereby held to have abandoned his extra territorial immunity from the operation of the bankrupt law of Louisiana, which released the defendant from all demands on his person, or subsequently acquired property.

The result then of what we must consider in this court as the decision in the foregoing cases is, that a state law discharging the person of a debtor from arrest for debts contracted in the state between its own citizens as affecting only the remedy to enforce, not the obligation of the contract, is valid, and not within the prohibition of the constitution, whether the debt was contracted before or after the law. Sturges v. Crowninshield, Ogden v. Saunders, Mason v. Haile [supra]. So is a law discharging both the persons and future acquisitions of the debtor from contracts posterior to the law; or from anterior ones, if the creditor makes himself a party to the proceedings which lead to the discharge in the state court. Ogden v. Saunders, Clay v. Smith. But such laws have no operation out of the state over contracts not made and to be carried into effect within it, or over the citizens of other states. Harrison v. Sterry [5 Cranch (9 U. S.) 289]; M'Millan v. M'Neill, Ogden v. Saunders, Shaw v. Robbins, Robertson's Adm'rs v. Bank of Georgetown [supra]. That it makes no difference whether the suit is brought in a state court, or the court of the United States; the rule is the same as to rendering judgment or issuing process. Farmers' & Mechanics' Bank of Pennsylvania v. Smith, Shaw v. Robbins, Ogden v. Saunders. A state law not repugnant to the constitution, laws or treaties of the United States is, by the thirty-fourth section of the judiciary act, a rule for the decision of all cases to which it applies in the federal courts; and we must decide on this precisely as the state courts ought to do. [Satterlee v. Matthewson] 2 Pet. [27 U. S.] 413, 414; [Wilkinson v. Leland] Id. 656; [Hinde v. Vattier] 5 Pet. [30 U. S.] 401.

With these settled principles to control our decision, it only remains to apply them to the contract, on which the plaintiffs have obtained their judgment. The defendant, residing in Philadelphia, consigned to the plaintiffs, residing in New York, a quantity of turpentine to be sold on his account. In anticipation of the sale he drew a bill on the plaintiffs, which was accepted and paid, the sales did not reimburse them, they brought their suit to recover the balance, and obtained the judgment on which the capias ad satisfaciendum was issued. By the nature of this contract the defendants undertook in law to pay this balance to the plaintiffs, were bound to reimburse them at the place where the money was advanced, and the plaintiffs had a right to draw for the difference between the amount of the bill so accepted and paid, and the proceeds of the sale. We can perceive no difference between this right in the plaintiffs to draw for this

balance, and the obligation of the defendant to pay, which arose from the nature of the contract, and a letter expressly authorising the drafts for acceptance. The case comes within the principle settled in Lanusse v. Barker, 3 Wheat. [16 U. S.] 101; where Lanusse having advanced money in New Orleans, on the faith of letters written by Barker in New York, it was held that the money was to be replaced at New Orleans, and Barker was adjudged to pay the balance at New Orleans interest of ten per cent. The undertaking then being to replace the money in New York, that was the place where the debt was payable; and the plaintiffs being citizens of that state, the discharge of the defendant by the insolvent laws of Pennsylvania can have no operation on the contract, or the remedies to enforce performance.

As the decisions of the supreme court are authoritative, we have not thought it necessary to go into detailed examination of those in the circuit courts. They will be found in accordance with the principles settled in the supreme court on all the points arising in the case. [Conard v. Atlantic Ins. Co. of New York] 1 Pet. [26 U. S.] 404; [D'Wolf v. Raband] Id. 484; Camfranque v. Burnell [Case No. 2,342]; Golden v. Prince [Id. 5,509]; Glenn v. Humphreys [Id. 5,480]; Fairchild v. Shivers [Id. 4,611]; Riston v. Content [Id. 11,862]; Babcock v. Weston [Id. 703]; Van Remsdyk v. Kane [Id. 16,871]; Shieffelin v. Wheaton [Id. 12,783]; Hinkley v. Marean [Id. 6,523].

Defendant remanded to custody.